CR23-82 DSD/DTS

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **INDICTMENT** |
| Plaintiff, | 18 U.S.C. § 1343 |
| | 18 U.S.C. § 1957 |
| v. | |
| SHARON ROSS, | |
| Defendant. | |

THE UNITED STATES GRAND JURY CHARGES THAT:

At times relevant to the indictment:

## INTRODUCTION

1. The defendant devised and carried out a multi-million dollar scheme to defraud the federal child nutrition program, a program designed to provide free meals to children. The defendant obtained, misappropriated, and laundered millions of dollars in program funds that were intended as reimbursements for the cost of serving meals to children. The defendant capitalized on changes in the program intended to ensure that underserved children received adequate nutrition during the Covid-19 pandemic. The defendant exploited the Covid-19 pandemic—and the resulting program changes—to enrich herself by fraudulently misappropriating millions of dollars in federal child nutrition program funds.

   A. **Background on the Federal Child Nutrition Program**

2. The Food and Nutrition Service is an agency of the United States Department of Agriculture (USDA) that administers various federal child nutrition



programs, including the Summer Food Service Program and Child and Adult Care Food Program (together, the "Federal Child Nutrition Program").

3. The Summer Food Service Program is a federal program established to ensure that children continue to receive nutritious meals when school is not in session. The Summer Food Service Program reimburses non-profit organizations and other participating entities that serve free healthy meals and snacks to children and teens in low-income areas.

4. The Child and Adult Care Food Program is a federal program that reimburses non-profit organizations and other participating entities that serve healthy meals and snacks to children and adults at participating child care centers, day care homes, and after-school programs.

5. The Federal Child Nutrition Program operates throughout the United States. The USDA's Food and Nutrition Service administers the programs at the national and regional levels by distributing federal funds to state governments, which provide oversight of the Federal Child Nutrition Program.

6. The Minnesota Department of Education (MDE) administers the Federal Child Nutrition Program in Minnesota.

7. Meals funded by the Federal Child Nutrition Program in Minnesota are served at "sites." Each site participating in the Federal Child Nutrition Program must be sponsored by an organization that is authorized to participate in the Federal Child Nutrition Program. Sponsors are required to submit an application to MDE for each

site. Sponsors are responsible for monitoring each of their sites and preparing reimbursement claims for their sites.

8. Sponsors submit reimbursement claims to MDE on behalf of sites under their sponsorship. The USDA provides federal reimbursement funds to MDE on a per-meal basis. MDE provides the federal funds to the sponsoring agency, which in turn pays the reimbursement funds to the sites under its sponsorship. The sponsoring agency retains ten to fifteen percent of the funds as an administrative fee in exchange for sponsoring the sites, submitting reimbursement claims, and disbursing the federal funds.

9. Historically, the Federal Child Nutrition Program has provided meals to children involved in education-based programs or activities. During the Covid-19 pandemic, the USDA waived several of the standard requirements for participation in the Federal Child Nutrition Program. Among other things, the USDA allowed for-profit restaurants to participate in the program. It also allowed for food distribution to children outside of educational programs. At the same time, the state government's stay-at-home order and telework policies made it more difficult to oversee the program. These changes left the program vulnerable to fraud and abuse.

### B. Feeding Our Future

10. Feeding Our Future was a Minnesota non-profit organization purportedly in the business of helping community partners participate in the Federal Child Nutrition Program. Aimee Bock was the founder and executive director of Feeding Our Future. Feeding Our Future was an approved sponsor of the Federal Child Nutrition Program.

11. Prior to the onset of the Covid-19 pandemic, Feeding Our Future was a small non-profit that sponsored the participation of Minnesota daycares and after-school programs in the Federal Child Nutrition Program.

12. Beginning in approximately April 2020, Feeding Our Future dramatically increased the number of sites under its sponsorship as well as the amount of Federal Child Nutrition Program funds received by those sites. Feeding Our Future went from receiving and disbursing approximately $3.4 million in federal funds to sites under its sponsorship in 2019 to nearly $200 million in 2021.

13. Aimee Bock oversaw a scheme to defraud, carried out by sites under the sponsorship of Feeding Our Future. Aimee Bock and Feeding Our Future sponsored entities that submitted fraudulent reimbursement claims and fake documentation. In 2020 and 2021, Aimee Bock and her company sponsored the opening of nearly 200 Federal Child Nutrition Program sites, knowing that the sites were submitting fraudulent claims.

14. In exchange for sponsoring the sites' fraudulent participation in the program, Feeding Our Future received nearly $18 million in Federal Child Nutrition Program funds as administrative fees in 2021. Because the amount of administrative fees it received was based on the amount of federal funds received by sites under its sponsorship, Feeding Our Future received tens of millions of dollars in administrative fees to which it was not entitled, due to its sponsorship and facilitation of fraudulent sites participating in the program.

15. In addition to receiving tens of millions of dollars in administrative fees, Feeding Our Future employees solicited and received bribes and kickbacks from individuals and sites under the sponsorship of Feeding Our Future. In effect, Feeding Our Future operated a "pay-to-play" scheme in which individuals seeking to operate fraudulent sites under the sponsorship of Feeding Our Future had to kick back a portion of their fraudulent proceeds to Feeding Our Future employees. Many of these kickbacks were paid in cash or disguised as "consulting fees" paid to shell companies created by Feeding Our Future employees to conceal the true nature of the payments and to make them appear legitimate.

**C.   Sponsor A**

16. Sponsor A was a Minnesota non-profit organization purportedly in the business of helping community partners participate in the Federal Child Nutrition Program. Like Feeding Our Future, prior to the onset of the Covid-19 pandemic, Sponsor A was a small non-profit that sponsored the participation of daycares and after-school programs in the Federal Child Nutrition Program.

17. Beginning in approximately April 2020, Sponsor A dramatically increased the number of sites under its sponsorship as well as the amount of Federal Child Nutrition Program funds received by those sites. The company went from receiving and disbursing approximately $5.6 million in federal funds to sites under its sponsorship in 2019 to more than $200 million in 2021. In 2021, sites under the sponsorship of Sponsor A claimed to have served more than 80 million meals to children in Minnesota. Many of the sites operating under the sponsorship of Sponsor A fraudulently inflated their claims in order to appear that they were

providing more food to children than was true. The defendant claimed to be serving meals to thousands of children each day in the State of Minnesota, for which she fraudulently claimed and received millions of dollars in Federal Child Nutrition Program funds.

**D.     The Defendant and Her Role**

18.     Defendant SHARON ROSS was the executive director of House of Refuge Twin Cities, a non-profit corporation located in St. Paul, Minnesota. ROSS registered House of Refuge with the State of Minnesota in or about July 2021. House of Refuge also operated as Evangelist Temple House of Refuge, Evangelist Temple House of Refuge Outreach Ministries, and House of Refuge Outreach Twin Cities.

19.     Through House of Refuge, ROSS participated in the Federal Child Nutrition Program as distribution sites under the sponsorship of both Feeding Our Future and Sponsor A. As distribution sites, House of Refuge was supposed to provide food and meals to children participating in the Federal Child Nutrition Program; House of Refuge would be reimbursed for the cost of the food and meals it actually provided.

20.     Among House of Refuge's purported food vendors and suppliers was Brava Café. Brava Café was a restaurant owned by Hanna Marakegn located in Minneapolis, Minnesota, that participated in the Federal Child Nutrition Program as a vendor.

21.     In all, House of Refuge received more than $2.4 million in Federal Child Nutrition Program funds for House of Refuge's sites between approximately October 2021 and January 2022.

## Scheme to Defraud the Federal Child Nutrition Program

22. From in or about March 2021 through in or about 2022, in the State and District of Minnesota, and elsewhere, the defendant,

SHARON ROSS,

and others known and unknown to the grand jury, did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, and for the purpose of executing this scheme caused wire transmissions to be sent in interstate commerce.

23. A main purpose of the scheme and artifice to defraud was to fraudulently obtain millions of dollars in Federal Child Nutrition Program funds by causing the submission of fraudulent information, including falsified invoices and meal count records with substantially inflated figures. As a food sites operator in the Federal Child Nutrition Program, ROSS was responsible for serving food to children. However, in furtherance of the scheme, ROSS and her co-schemers caused the submission of false information, such as meal counts, rosters, and invoices, and consequently received Federal Child Nutrition Program funds that substantially exceeded the small amounts of food that the defendant served to children.

24. To carry out the scheme, House of Refuge obtained fraudulent invoices for inflated quantities of food purchased (from wholesalers or distributors) or meals served (from vendors) to make it appear as though they were serving meals to thousands of children each day. The defendant claimed to be serving meals to thousands of children each day around the State of Minnesota, for which she

fraudulently claimed and received millions of dollars in Federal Child Nutrition Program funds.

25. An additional purpose of the scheme was to misappropriate millions of dollars in fraudulent proceeds in order to enrich and benefit the defendant, including spending money intended to feed children on such items as real estate, vehicles, and travel.

*ROSS's Role in the Scheme to Defraud*

26. In furtherance of the scheme to defraud, ROSS operated sites that fraudulently received Federal Child Nutrition Program funds under the sponsorship of Sponsor A. ROSS also operated sites and applied for Federal Child Nutrition Program funds under the sponsorship of Feeding Our Future. ROSS's sites purportedly served thousands of meals to children in need using Brava Café as ROSS's supposed food supplier. In reality, ROSS's operations served only a small fraction of the meal amounts claimed.

27. To further the scheme to defraud, in or about July 2021, ROSS registered House of Refuge with the State of Minnesota. Between approximately October 2021 and January 2022, ROSS received approximately $2.4 million in Federal Child Nutrition Program funds directly from Sponsor A to ROSS's corporation, House of Refuge. However, little of this money was used by ROSS to purchase food.

28. It was additionally part of the scheme to defraud that ROSS caused the submission of fraudulent meal counts, attendance rosters, and invoices in order to

receive reimbursement funds fraudulently from the Federal Child Nutrition Program under the sponsorship of Feeding Our Future and Sponsor A. For instance, one of ROSS's sites alone fraudulently claimed to have served more than 10,085 meals to children from just September 8, 2021, to September 30, 2021. In reality, ROSS's operations at that location served a fraction of the meal amounts claimed. Moreover, despite ROSS's claims, the supposed food vendor for ROSS's location, in fact, did not provide the food during that time claimed through ROSS's House of Refuge.

29. In furtherance of the scheme to defraud, ROSS diverted proceeds she received from Sponsor A to other participants in the scheme. For instance, ROSS paid one of her purported vendors, Hanna Marakegn of Brava Café, when, in fact, Marakegn had not supplied the actual food for which ROSS paid Marakegn, which included, among other payments, approximately $642,652 in November 2021, December 2021, and February 2022.

30. It was further part of the scheme that ROSS misappropriated Federal Child Nutrition Program funds to benefit herself and others. For instance, ROSS used fraud proceeds to pay at least $387,000 to herself and an additional approximately $366,000 to apparent family members.

31. ROSS fraudulently caused more than $1.3 million to be paid by Sponsor A to Marakegn for ROSS's sites for which Marakegn purported to provide food and meals. In reality, Marakegn provided little food for ROSS's House of Refuge distribution sites.

32. Rather than provide thousands of meals to children, it was further part of the scheme that ROSS paid more than $100,000 towards real estate rental property, $21,000 towards personal vehicles, and more than $17,000 towards credit card and loan payments.

33. In total, in furtherance of her scheme to defraud, ROSS caused MDE to pay at least $2.8 million in reimbursements from the Federal Child Nutrition Program.

**Counts 1-10**
(Wire Fraud)

34. Paragraphs 1 through 33 are incorporated herein.

35. From at least in or about March 2021 through in or about 2022, in the State and District of Minnesota, and elsewhere, the defendant,

SHARON ROSS,

and others known and unknown to the grand jury, did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

36. On or about the dates listed below, in the State and District of Minnesota and elsewhere, the defendant, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain writings, signs, signals, and sounds, including the following:

| Count | Date (on or about) | Wire Details |
|---|---|---|
| 1 | March 30, 2021 | An email from SHARON ROSS to Sponsor A with the subject line "[Sponsor A] 2021 Application" that passed through servers located outside the State of Minnesota |
| 2 | September 30, 2021 | An email from SHARON ROSS to Sponsor A with the subject line "House of Refuge September Numbers" that passed through servers located outside the State of Minnesota |
| 3 | October 5, 2021 | An email from SHARON ROSS to Sponsor A with the subject line "House of Refuge List" that passed through servers located outside the State of Minnesota |
| 4 | October 12, 2021 | An email from SHARON ROSS to Jonathan Ross with the subject line "Meal Attendance Counts" that passed through servers located outside the State of Minnesota |
| 5 | October 15, 2021 | An email from SHARON ROSS to Sponsor A with the subject line "Roster for House of Refuge" that passed through servers located outside the State of Minnesota |
| 6 | October 15, 2021 | An email from SHARON ROSS to Sponsor A with the subject line "Updated invoice from Brava Cafe" that passed through servers located outside the State of Minnesota |
| 7 | December 6, 2021 | An email from SHARON ROSS to Sponsor A with the subject line "Great Is Thy Faithfulness – Invoice from Brava" that passed through servers located outside the State of Minnesota |
| 8 | December 6, 2021 | An email from SHARON ROSS to Sponsor A with the subject line "House of Refuge Outreach – November Submission" that passed through servers located outside the State of Minnesota |
| 9 | February 15, 2022 | An email from SHARON ROSS to Sponsor A with the subject line "Invoices for December" that passed through servers located outside the State of Minnesota |
| 10 | March 9, 2022 | An email from SHARON ROSS to Sponsor A with the subject line "Invoices for House of Refuge January Claim" that passed through servers located outside the State of Minnesota |

All in violation of Title 18, United States Code, Section 1343.

### Counts 11-12
(Money Laundering)

37. Paragraphs 1 through 36 are incorporated herein.

38. On or about the dates listed below, in the State and District of Minnesota and elsewhere, the defendant,

### SHARON ROSS,

knowingly engaged and attempted to engage in monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, as described below, such property having been derived from specified unlawful activities, namely, wire fraud, in violation of Title 18, United States Code, Section 1343:

| Count | Date (on or about) | Transaction |
|---|---|---|
| 11 | January 18, 2022 | A $15,259 cashier's check from SHARON ROSS to Royal Credit Union to pay off the auto loan for her husband's 2011 Infinity vehicle |
| 12 | May 4, 2022 | Deposit of a cashier's check in the amount of approximately $120,600 from an account controlled by SHARON ROSS to Clear Title, LLC, toward the purchase of a residential property located at 312 Chippenham Lane, Willernie, Minnesota 55090 |

All in violation of Title 18, United States Code, Section 1957.

### FORFEITURE ALLEGATIONS

39. Counts 1 through 12 of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) in conjunction with Title 28, United States Code, Section 2461(c), and pursuant to Title 18, United States Code, Section 982(a)(1).

40. If convicted of any of Counts 1-10 of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to Counts 1-10 of the Indictment.

41. If convicted of any of Counts 11-12 of this Indictment, the defendant shall also forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957 and any property traceable to such property.

42. The property subject to forfeiture includes, but is not limited to the real property including all structures located at 312 Chippenham Lane, Willernie, Minnesota.

43. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____          _____
UNITED STATES ATTORNEY                           FOREPERSON