UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CASE NO. 0:23CR00082-001 (NEB)

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                        **DEFENDANT SHARON ROSS' POSITION REGARDING SENTENCING**

SHARON ROSS,

        Defendant.

The Defendant, Sharon Ross, through her counsel, Earl Gray and Amanda Montgomery, take the following position with respect to sentencing factors:

### I.   INTRODUCTION

Ms. Ross will come before this court for sentencing following her plea of guilty to Count I – wire fraud in violation of Title 18, United States Code, Section 1343. She has accepted responsibility for her crimes both in the plea before the court and to the PSI writer. She pled guilty relatively early in the process considering the breadth of discovery received. She asks that she now be sentenced fairly based upon her admission, acceptance, and the person she is and grew up as, recognizing the good in her personality and her past history of legitimate charity work and helping her community.

The issues to be resolved at sentencing are the guideline calculation, because the defense and prosecution agree, while the probation office has calculated otherwise. Specifically, probation added 4 additional points for specific offense characteristics that were not contemplated in the plea agreement, and we object to. Next, should the Court disagree with the above objection, a downward departure is warranted. Ultimately, considering the objections and motions, as well as the factors of 18 U.S.C. § 3553 (a), the defendant asks that the Court vary downward from the

1

applicable Guidelines' range and sentence her to probation or a minimal prison term. Any lengthy prison sentence would be simply greater than necessary to accomplish the goals of sentencing.

## II.   SPECIFIC OBJECTIONS TO PRESENTENCE REPORT

Page 1, Par. 3 – The money judgment amount is $2,434,360.00 and not $2,837,491.00.

Page 7, Par. 41 – The timeline listed is not accurate for this case. Ross was brought into the program July 2021 and was involved until January 2022. July and August with Feeding Our Future, September – January with Partners in Nutrition. She received payment reimbursements through the program for three months.

Page 8, Par. 45 – Ross did use some of the funds received for personal and family matters, but she also paid several employees compensation (food packers and drivers) as well as thousands of dollars in expenses for the building, utilities, trash, phone, internet, etc. Ross did not use the funds received from this program to travel to Dubai, that was a trip paid for by another employer, Global Medical Services. As for the Timberwolves Game, she did purchase a suite with funds, however she attended with a few adults and the remainder of the guests were kids involved in the program. The trip to Florida was for her mother's birthday and she did purchase airline tickets and then used previously earned miles to upgrade to first class seats. Lastly, her vehicle was purchased in April 2021 and she did not ever get any plastic surgery procedures completed.

Page 9, Par. 52 – This 2-level increase was not contemplated in the plea agreement and should not be added to the final calculation for offense level. There was no misrepresentation that Ross was acting on behalf of a charitable organization. She in fact was the executive director of House of Refuge, a non-profit company located in St. Paul, for a couple of years even before getting involved in these government programs for reimbursement. She was still actively running a food shelf as a charitable organization during the time of this case. A county official approached

Ross and told her she could get federal reimbursement money for what she was already doing – providing food to the community, she was operating under House of Refuge as a non-profit organization.

Page 9, Par. 53 – This 2-level increase was not contemplated in the plea agreement and should not be included in the final calculation. This offense does not qualify as fraud in connection with a major disaster or emergency benefits. Ross's involvement in this offense was September-December 2021. The Federal Child Nutrition Program was a program for providing meals to children. This program was in existence prior to the pandemic that began in March 2020. The benefits being offered predate the pandemic. This program was not designed for "emergency benefits". It was already in existence.

Page 16, Par. 103 – Object to this guidelines range based on plea agreement and the added 4 points. The plea agreement calculated an offense level of 20 and guideline range of 37 to 46 months.

III.     ARGUMENT

A. Sentencing Considerations Generally

In *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), the United States Supreme Court clarified the two-step process to be followed in federal sentencing. The first step is to determine the proper Guidelines' range for the defendant's sentence. *Gall*, 552 U.S. at 49, 128 S.Ct. at 596. In the second step, the court should consider the factors in 18 U.S.C. §3553(a) and determine whether a departure or a variance is appropriate. *Gall*, 552 U.S. at 49-50, 128 S.Ct. at 596-97; *United States v. Roberson*, 517 F. 3d 990, 993 (8th Cir. 2008).

The correct calculation of a sentence under the guidelines is a starting point. *Gall*, 552 U.S. at 49, 128 S.Ct. at 596. The overarching consideration under the Sentencing Reform Act is that the

sentencing court "'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101, 128 S.Ct. 558, 570 (2007). As the United States Supreme Court recognized, "(i)t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113, 116 S.Ct. 2035, 2053 (1996). Indeed, the district courts have an "institutional advantage" in making sentencing decisions as "they see so many more Guidelines cases than appellate courts do." *Koon*, 518 U.S. at 98, 116 S. Ct. at 2047.

18 U.S.C. §3661 governs the use of information for sentencing. This statute provides that "(n)o limitations shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. §3661. By enacting this statute, "Congress codified the 'long standing principle that sentencing courts have broad discretion to consider various kinds of information." *Pepper v. United States*, 562 U.S. 476, 488, 131 S.Ct. 1224, 179 L.Ed.2d 166 (2011); *United States v. Watts*, 519 U.S. 148, 151, 117 S.Ct. 663, 136 L.Ed.2d 554 (1997). The United States Supreme Court has emphasized that possession of the fullest information possible concerning a defendant's life and characteristics is "highly relevant—if not essential—to the selection of an appropriate sentence." *Pepper*, 562 U.S. at 488; citing *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). "Permitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.'" *Pepper*, 562

U.S. at 488; citing *Wasman v. United States*, 468 U.S. 559, 564, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984).

The traditional discretion of sentencing courts to conduct a broad inquiry that includes largely unlimited information continued after passage of the Sentencing Reform Act of 1984 and the enactment of the United States Sentencing Guidelines scheme. Pepper, 562 U.S. at 488-489. Under the Supreme Court's existing sentencing framework, while the Guidelines are the starting point for sentencing and an initial benchmark, "district courts may impose sentences within statutory limits based on appropriate consideration of all the factors listed in §3553(a), subject to appellate review for 'reasonableness.'" *Pepper*, 562 U.S. at 490; citing Gall, 552 U.S. at 49-51.

## B. Departure/Variance Grounds

*United States v. Booker*, 534 U.S. 220, 125 S. Ct. 738, 764-66, 160 L.Ed.2d 621 (2005) (Breyer, J.), mandates that sentences be "reasonable" in light of the factors enunciated in 18 U.S.C. §3553(a). *United States v. Winters*, 416 F.3d 856, 859 (8th Cir. 2005).

1. **Nature and circumstances of the offense.**

The offense is serious, Ms. Ross understands that participating in this fraud has caused real harm to not only her community but the state of Minnesota and society. She understands that the choices she made were wrong. Her world has been turned upside down. Ms. Ross asks the court to consider her background and the circumstances that got her to the point when she was involved in this crime, and further, where she is now.

Ms. Ross started House of Refuge (HOR) in 2018 out of her church. Her mother was the Pastor since 2005 at the same church, Ms. Ross became the Pastor in 2018. HOR started weekly food distribution in 2019 out of an Oakdale location. HOR moved to the Atwater address in St. Paul in 2020 due to their large demand. In April 2021, Omar Jamal, from the Ramsey County Sheriff's

department, was at HOR and told Ms. Ross that she could get funding to pay for the building expenses and staffing. Later that month Omar Jamal brought in Aimee Boch from Feeding Our Future, Aimee educated Ms. Ross on the Minnesota Department of Education funding that was available, she also put in an application for HOR to get the funding. There were later site visits made by the MN Department of Education staff. By June 2021 HOR was approved. Ms. Ross was also told she needed a vendor to work with and was connected to Hannah Marekgn, through Omar and Aimee, to be her vendor of food. After Aimee Boch, Ms. Ross worked through Kara Lomen as her sponsor, Partners in Quality Care. She received reimbursement funds for three months, which were split evenly with Ms. Marekgn.

Ms. Ross began her role as director of HOR doing completely legitimate charity work, it was not until Omar Jamal walked her into the reimbursement program that she got wrapped up in this illegal and awful fraud scheme. She does take responsibility and makes full admission of her wrongs but would also like the court to know she had good intentions at the outset, which is evidenced by her lengthy history of charity and food shelf work. She got walked into this program by the people mentioned, before fully understanding the details, and things spiraled from there. She accepted the money she was given, and she knows that it is only her fault now.

2. **History and characteristics of the defendant**

Ms. Ross is much more than just a person involved in this fraud disaster. She has an interesting history of raising a child at the age of 14 and working to survive. Ms. Ross grew up in Kansas City until the age of 11 when she came to Minnesota with family. Ms. Ross got pregnant in 1985 at the age of 14 years old. She was in 10th grade, going to school while taking care of a newborn, and working. After graduating high school she began working right away to support herself and her son. In 1993 Ms. Ross married her son's father and they remain married today, they have two

additional children.  In 1997 Ms. Ross was forced to have a hysterectomy at the young age of 26 after medical concerns and many tests.

Ms. Ross has an extensive background of helping others in her community. Other than her charity work throughout the years, in February 1993, she was called into the ministry and was licensed as a minister to preach.  She was preaching all across the Twin Cities and sometimes out of state. Additionally, in 2006 Ms. Ross' church partnered with another church in Minneapolis and created The Camden Promise, a food shelf serving families throughout the twin cities. The Camden Promise is still in operation, although Ms. Ross has not been involved since approximately 2013. In 2013 Ms. Ross joined another church, New Creations Church of God and helped developed their food shelf for two years.  In 2018, she became pastor of the church her mother was the pastor at.  She also started a food shelf there.  In 2019-2020 they expanded and moved to the Atwater location and continued to serve many families.

Ms. Ross has also worked in education.  Working in the charter school system and also with a national education reform to better assist the quality of education to all children.  She was an integral part of creating a charter school in partnership with Dunwoody College of Technology for inner city urban youth in 2008.  She recruited all of the 200+ students that enrolled and the staff. She also implemented the policies and procedures.

Ms. Ross became the legal guardian for her aunt's grandson, who was born addicted to drugs and alcohol and has several mental disorders.  Her aunt died in 2014 and she took over guardianship sometime after that.  Ms. Ross is still his guardian today.

Ms. Ross has the support of many family and community members who have written letters on her behalf and will be filed with the court.  The letters speak to Ms. Ross' positive characteristics, there are many.  Ms. Ross currently assists in taking care of her elderly mother and

her mother in law, both of which live with her and her husband. She certainly has the capacity and drive to do good in this world. She has aspirations of what she will do in her future to help others and yearns to continue her passion. Ms. Ross' background, personal characteristics, and strong support are mitigating factors for sentencing.

### IV.   CONCLUSION

Based on the foregoing, Sharon Ross, through her counsel, requests that this Honorable Court vary downward to probation and if the court finds prison appropriate, that the court order Ms. Ross go to a federal institution in or near Minnesota where her family lives.

Respectfully submitted,

Dated:   January 23, 2025

/s/ Earl Gray
Earl Gray
Attorney ID #37072
332 Minnesota Street, Suite W1610
St. Paul, MN 55101
(651) 223-5175

/s/ Amanda Montgomery
Amanda Montgomery
Attorney ID #0393287
332 Minnesota Street, Suite W1610
St. Paul, MN 55101
(651)223-5175