UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-82 (NEB)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SHARON ROSS,

    Defendant.

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Only seven months ago, this Court sentenced Sharon Ross to 43 months in prison for her role in the Feeding Our Future fraud. Ross now seeks early release from prison to care for her cousin, D.R., a disabled adult over whom Ross has guardianship. Doc. No. 85.

The Court should dismiss her motion without prejudice because she has failed provide evidence that she complied with the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A). If the Court considers Ross's claim on the merits, it should be denied. Her family circumstances do not meet the demanding standard for early release from prison, and the federal sentencing factors weigh heavily against granting relief.

## Factual and Procedural Background

### I. Ross Uses Her Role as Executive Director of a Faith-Based Charity to Defraud the Federal Child Nutrition Program.

Ross was the executive director of House of Refuge, a Twin Cities non-profit. PSR ¶ 42. She enrolled House of Refuge in the Federal Child Nutrition

Program under the sponsorship of first Feeding Our Future and, later, Partners in Nutrition. She claimed that House of Refuge operated food distribution sites at dozens of locations in the region, in cooperation with a Minneapolis restaurant called Brava Café. *Id*. Ross and the owner of Brava Café, Hanna Markegn, purported to serve 900,000 meals to children between September 2021 and February 2022. PSR ¶ 43. Ross and Markegn received nearly $2.5 million in Federal Child Nutrition Program reimbursements based on their fraudulent claims, with Ross personally receiving roughly $900,000. PSR ¶ 44. She used the money to buy real estate, take vacations, and pay off personal loans. PSR ¶ 45.

As part of Ross's scheme, she submitted false documentation that she and various family members were working long hours to provide meals for children. One such family member was her cousin D.R. Doc. No. 62 at 8-9. Ross claimed that D.R. worked 12 hours a day, seven days a week for House of Refuge and that she paid him $35/hour for that work. *Id*.

In reality, D.R. has been profoundly disabled since childhood. Doc. No. 85-1 at 19-20 (listing D.R.'s historical and current diagnoses). He had (and has) an at-home personal care assistant (PCA) because of his disabilities. And, at the same time that Ross claimed D.R. was working 12-hour days at House of Refuge, Ross submitted time sheets showing that D.R. was receiving between 5 and 9 hours a day in PCA services. Doc. No. 62 at 9.

2

II.  **Charges, Plea and Sentencing**

Ross was charged with multiple counts of wire fraud and money laundering in March 2023. Doc. No. 1. In January 2024, she pleaded guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343. Doc. No. 43. In Ross's plea agreement, the parties assessed her Guidelines range to be 37-46 months' imprisonment. *Id.* at 6-7.

Sentencing took place about at year later. The Court calculated her Guidelines range to be 51-63 months in prison. Doc. No. 69 at 1. The Court imposed a sentence of 43 months, in line with the range contemplated in the plea agreement. *Id.* at 3. The Court allowed Ross to self-surrender and extended the date of her self-surrender based in part on Ross's responsibilities as D.R.'s guardian. *See* Doc. Nos. 71, 72.

Ross is currently serving her sentence at FCI Waseca. BOP, *Find an inmate*, https://www.bop.gov/inmateloc/ (last accessed September 24, 2025). She has an expected release date in March 2028. *Id.*

### Ross's Motion for Compassionate Release

Ross seeks compassionate release based on her desire to care D.R. Doc. No. 85. Since Ross began her prison sentence, D.R. has lived with Ross's brother, who serves as D.R.'s PCA. *Id.* Ross now claims her brother is "unable to continue caring for [D.R.]." *Id.* She states her brother's wife is gravely ill and her brother "is not in the best physical health himself," having suffered two

strokes. *Id*. Ross does not assert that her brother is incapacitated and has not provided medical records documenting the medical conditions of her brother or her brother's wife. *Id*.

Ross also asserts that she presented a request for a sentence reduction to BOP in July 2025. *See* Doc. No. 85 at 3. However, she did not submit any evidence of such a request with her motion despite that the motion form instructs her to do so. *Id*.

## Legal Framework

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his term of imprisonment. As the movant, the defendant bears the burden to establish that she is eligible for a sentence reduction. *United States v. Avalos Banderas,* 39 F.4th 1059 (8th Cir. 2022) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016)).

Prior to seeking relief from the Court, an inmate must present her claims to the BOP first for consideration. *See* § 3582(c)(1)(A); *United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021). A court may grant the defendant's own motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*. This statutory exhaustion

4

requirement is a "mandatory claim-processing rule" that "must be enforced so long as the opposing party properly raises it." *Houck*, 2 F.4th at 1084. "[C]ourts dismiss unexhausted compassionate-release motions without prejudice." *Id.*

If the exhaustion requirement is met, and the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," then a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]," as they are applicable. *Id.* § 3582(c)(1)(A)(i). Relevant to Ross's motion, federal prisoners may seek early release to care for "an individual whose relationship with the defendant is similar in kind to that of an immediate family member" and who is incapable of self-care if that individual's current caregiver has died or become incapacitated. U.S.S.G. § 1B1.13(b)(3)(D), (b)(3)(A). To qualify for compassionate release under that subsection of the policy statement, the defendant must establish that she is "the only available caregiver" for the individual. *Id.*

Grants of compassionate release are rare. "[T]he extraordinary-and-compelling standard sets a very high bar and authorizes sentence reductions only in 'truly exceptional cases.'" *United States v. Logan*, 532 F.Supp.3d 725, 729-30 (D. Minn. Apr. 1, 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 287-88 (4th Cir. 2020)). Further, the Eighth Circuit has explained that "[t]he

5

compassionate release statute is not a freewheeling opportunity for resentencing," but is instead to be used to address emergent individual circumstances. *United State v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022).

## Argument

I. **This Court Should Dismiss Ross's Motion Because She Has Not Provided Evidence That She Presented Her Claim to BOP First for Consideration.**

This Court presently lacks authority to act on Ross's motion for a sentence reduction. As explained above, § 3582(c)(1)(A) requires that a request for a sentence reduction be presented first to BOP for its consideration. *Houck*, 2 F.4th at 1084. Courts cannot create equitable exceptions to that mandatory claim-processing rule when the government timely invokes it. *See id*; *Ross v. Blake,* 136 S. Ct. 1850, 1857 (2016).

The government raises the rule here, and it must be enforced. Ross bears the burden to establish her eligibility for compassionate release, including the exhaustion requirement. *Avalos Banderas*, 39 F.4th at 1062. She has not done so, and Court should therefore dismiss her motion without prejudice. *Houck*, 2 F.4th at 1084.

In the event Ross furnishes evidence of compliance with the exhaustion requirement, the government submits a response to her claim below.

6

## II. Ross's Family Situation is Not a Basis for Compassionate Release.

To qualify for compassionate release under U.S.S.G. § 1B1.13(b)(3)(D) and (b)(3)(A), Ross must present evidence that D.R.'s current caregiver is deceased or incapacitated. *United States v. Martinez*, 2025 WL 750163 at *2 (D. Minn. Mar. 10, 2025). Ross does not make such claims. Doc. No. 85 at 7. Instead, she states only that D.R. and his caregiver are experiencing difficulties because of her incarceration. The policy statement requires far more.

Even if Ross's claim met the standard articulated in § 1B1.13(b)(3)(D) and (b)(3)(A), it fails because she does not present any independent evidence to substantiate her claims, such as medical records for her brother and his wife.[1] *United States v. Collins*, 2020 WL 136859, at *4 (D. Kan. Jan. 13, 2020) ("Information and documentation must be provided showing the incapacitation of the caregiver…."). Again, Ross bears the burden to establish eligibility for compassionate release. Her unsupported statements about her family are far from sufficient to do so.

---

[1] Ross provides evidence of her guardianship and D.R.'s diagnoses, but those are not in dispute. Indeed, the government noted D.R.'s disabilities and Ross's role as his guardian in its sentencing position. *See* Doc. No. 62 at 8-9.

7

Finally, Ross's use of D.R.'s name and identity as part of her fraud scheme should give the Court pause as it considers her current motion. As guardian to an individual with profound disabilities, Ross is in a position of trust. Her decision to put D.R. on the House of Refuge payroll to extract more funds from the Federal Child Nutrition Program was a gross abuse of that trust. The Court should take those actions into account when assessing Ross's request to resume full-time care for D.R.

### III. The § 3553(a) Factors Weigh Against Granting Ross's Motion.

Ross has no extraordinary and compelling reasons for release, so the Court does not need to conduct an analysis of the § 3553(a) factors. *See* 18 U.S.C. § 3582(c)((1)(A). But if it does, those considerations strongly disfavor release in this case. And the federal sentencing factors, on their own, can override any extraordinary and compelling circumstances a defendant can demonstrate. *United States v. Rodd*, 966 F.3d 740, 748 (8th Cir. 2020).

Ross took advantage of a once-in-a-century global pandemic to enrich herself. She abused a child nutrition program designed to ensure that no child goes without food. Her offenses are precisely the type of crimes contemplated by *Rodd*—so harmful that they outweigh any other consideration. Reducing her sentence by roughly 85% would undermine every goal of federal sentencing law. In particular, it would fail to provide adequate deterrence, promote

respect for the law, and reflect the seriousness of the offense. *United States v. Meli*, 2020 WL 2114769, at *2 (S.D.N.Y. May 4, 2020) (denying compassionate release to fraud defendant based on § 3553(a) factors because defendant's scheme caused grave financial and emotional harm to his many victims and was extraordinarily serious).

## Conclusion

The Court should dismiss Ross's motion for compassionate release without prejudice, or, in the alternative, deny it on the merits.

Dated: September 24, 2025        Respectfully submitted,

JOSEPH H. THOMPSON
Acting United States Attorney

*s/ Katharine T. Buzicky*

By: KATHARINE T. BUZICKY
Assistant U.S. Attorney
Attorney ID No. 671031MA