UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-82 (NEB)

UNITED STATES OF AMERICA,

          Plaintiff,

          v.

SHARON ROSS,

          Defendant.

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255**

The United States of America by its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Katharine T. Buzicky, Assistant United States Attorney, submits this response in opposition to Defendant Sharon Ross's motion to vacate her sentence under 28 U.S.C. § 2255. For the reasons set forth in this memorandum, the Court should deny her motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Ross Participates In The Feeding Our Future Fraud Conspiracy

Ross was the executive director of House of Refuge, a Twin Cities non-profit. PSR ¶ 42. She enrolled House of Refuge in the Federal Child Nutrition Program under the sponsorship of first Feeding Our Future and, later, Partners in Nutrition, participating in the sprawling fraud perpetrated during the COVID-19 pandemic.

1

As part of the fraud, Ross claimed that House of Refuge operated food distribution sites at dozens of locations in the region, in cooperation with a Minneapolis restaurant called Brava Café. *Id.* Ross and the owner of Brava Café, Hanna Markegn, purported to serve 900,000 meals to children between September 2021 and February 2022. PSR ¶ 43. Ross and Markegn received approximately $2,434,360 in Federal Child Nutrition Program reimbursements based on their fraudulent claims, with Ross personally receiving about a million dollars. PSR ¶ 44; Doc. No. 43 at 3. She used the money to buy real estate, take trips, book a suite at a Timberwolves game, and for other personal expenses. PSR ¶ 45.

## II.    Charges, Plea, And Sentencing

Ross was charged with multiple counts of wire fraud and money laundering in March 2023. Doc. No. 1. Attorneys Earl Gray and Amanda Montgomery were appointed to represent her.[1] Doc. No. 13.

In January 2024, Ross pleaded guilty pursuant to a written plea agreement to one count of wire fraud, in violation of 18 U.S.C. § 1343. Doc. No. 43. In the agreement, the parties stipulated that Ross's base offense level was 7, increased by 16 levels because loss amount was $2,434,360. *Id.* at 3, 5. The

---

[1] Ross's motion makes no mention of Montgomery, alleging ineffective assistance of counsel by Gray only. *See generally* Doc. No. 94. Therefore, this response refers only to his work on the case.

parties believed Ross's criminal history category was II, which led to a resulting Guidelines range of 37 to 46 months' imprisonment. *Id*. at 6. As to forfeiture, Ross agreed to a money judgment of $2,837,491. *Id*. at 9.

Also as part of the plea agreement, Ross waived her right to appeal, reserving only a challenge to "the substantive reasonableness of a term of imprisonment above the high end of the Guidelines range of imprisonment." *Id*. at 9-10. She also waived her right to file a motion under 28 U.S.C. § 2255 "except based upon a claim of ineffective assistance of counsel." *Id*. at 11.

After the hearing, the Probation Office prepared a Presentence Investigation Report. Like the plea agreement, the PSR calculated a base offense level of 7, increased by 16 levels based on the loss amount. PSR ¶¶ 50, 51. However, the PSR also assessed a 2-level enhancement because Ross held herself out as acting on behalf of a charity, and a 2-level enhancement because she committed fraud in connection with a major disaster. *Id*. at ¶¶ 51-53. After factoring in acceptance of responsibility, Ross's total offense level was 24. *Id*. ¶ 61. The probation officer determined Ross's criminal history category to be I, so her Guidelines range was 51 to 63 months' imprisonment *Id*. ¶ 103. The PSR calculated a loss amount of $2,434,360 but noted that the money judgment forfeiture set forth in the plea agreement was $2,837,491. PSR ¶¶ 44, 3.

Gray filed objections to the PSR. He challenged the money judgment amount, raised factual objections to the summary of Ross's offense conduct,

and made extremely specific objections to her use of the fraud proceeds. Doc. No. 51. Specifically, he objected to the statement that Ross's trip to Dubai was funded with fraud proceeds, detailed the guests at her Timberwolves suite, clarified that she used frequent-flier miles to upgrade to first-class seats on a flight to Florida, and objected to an assertion that she underwent plastic surgery. *Id.* at 1; *see also* Doc. No. 60 at 2-3.

In November 2024, the government filed a motion for a preliminary order of forfeiture. Doc. No. 53. Relevant here, the motion sought a money judgment of $1,241,455. *Id.* at 1. The government explained in the motion that Ross was responsible for a loss of $2,434,360, but "[b]ecause she split [the fraud] proceeds with [Markegn], the United States is limiting the amount of the requested money judgment forfeiture against Ross to only the amount she received through House of Refuge." *Id.* at 7-8.

The parties filed their sentencing positions in January 2025. The government sought a 46-month prison sentence. Doc. No. 62 at 1. Ross asked the Court to impose a probationary sentence "or a minimal prison term." Doc. No. 60 at 1.

Ross appeared for sentencing in February 2025. Doc. No. 67. The Court calculated her Guidelines range as 51 to 63 months, as set forth in the PSR. However, the Court varied downward to impose a 43-month sentence, to be

followed by three years of supervised release. Doc. Nos. 68, 69. Ross was also ordered to pay $2,434,360 in restitution. Doc. No. 68.

Ross did not appeal.

### III.    The Motion To Vacate

Ross filed a timely motion under § 2255 to vacate, set aside, or correct her sentence, raising four claims of ineffective assistance of counsel. Doc. No. 94. First, Ross alleges that she asked Gray to file a notice of appeal, but Gray replied Ross "would have to hire another attorney because he wouldn't file one for [her]." *Id.* at 4. Second, Ross asserts Gray "failed to challenge the 'actual loss' attributed to [her] in the fraudulent act" and did not "make it known to the courts [*sic*] that the Amended PSI shows a reduced judgment amount of $1,241,455," while Ross's Guidelines reflected a loss amount of $2,434,360. *Id.* at 5. Third, Ross alleges Gray "failed to communicate pertinent elements of the fraudulent act to [her]." *Id.* at 7. Finally, Ross claims Gray did not discuss the PSR or discovery with her and did not show her the "Amended PSR." *Id.* at 8.

### LEGAL STANDARD

To prevail on a motion filed under 28 U.S.C. § 2255, a prisoner must show that his challenge raises a "fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States,* 417 U.S. 333, 346 (1974) (quotation omitted); *see also United States v. Apfel,* 97 F.3d 1074, 1076 (8th Cir. 1996). Thus, § 2255 "does not encompass all claimed errors in

conviction and sentencing," but only "jurisdictional and constitutional errors." *Sun Bear v. United States,* 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting *United States v. Addonizio,* 442 U.S. 178, 185 (1979)). Beyond that, its scope is "severely limited." *Id.*

Ineffective assistance of counsel claims are cognizable under § 2255. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). The standard that a defendant must meet to show ineffective assistance of counsel sets a high bar, *e.g.*, *Love v. United States*, 949 F.3d 406, 410 (8th Cir. 2020), and "is never an easy task." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks and citation omitted). Errors alone do not meet the ineffective-assistance standard because the Sixth Amendment "does not require perfect trial performance; it requires only competence." *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995).

Courts have explained that the ineffective-assistance standard is "a most deferential one" that must be applied "with scrupulous care." *Harrington*, 562 U.S. at 105. It is "all too tempting to second-guess counsel's assistance after conviction or adverse sentence." *Id.* (internal quotation marks and citation omitted). The question is "whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). To establish an ineffective-assistance claim, defendant must prove two separate prongs, often referred to as the

6

*Strickland* test. Failure to establish either component – deficient performance or prejudice – is fatal to a claim of ineffective assistance. *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011) (citing *Strickland*, 466 U.S. at 697). Courts do not have to evaluate both prongs of the *Strickland* test if defendant fails to establish one. *Deroo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000).

## I.   Performance Prong

To prevail on an ineffective-assistance claim, a defendant must first show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *Love*, 949 F.3d at 410. Defendants "cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." *Hall v. Luebbers*, 296 F.3d 685, 692 (8th Cir. 2002) (citation omitted). "An attorney is not incompetent in exercising reasonable professional judgment even when, in hindsight, the decision may have been a mistake." *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013). Instead, the reasonableness of counsel's conduct must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690.

Furthermore, the test of whether counsel's performance was deficient does "not . . . consider the attorney error in isolation, but instead . . . assess[es] how the error fits into the big picture of what happened at trial." *Jackson v.*

*United States*, 956 F.3d 1001, 1006 (8th Cir. 2020) (internal quotation marks and citation omitted); *see also Davis v. United States*, 858 F.3d 529, 534 (8th Cir. 2017) (fair assessment requires that "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time"). Judicial scrutiny of counsel's performance is "highly deferential," and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689; *Harrington*, 562 U.S. at 104. Since there are "countless ways to provide effective assistance in any given case," strategic choices as to how to defend a case are "virtually unchallengeable." *Strickland*, 466 U.S. at 689-90; *see also Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir. 1985) ("[A]n ineffective assistance of counsel claim cannot be based on a decision relating to a reasoned choice of trial strategy, even when proved improvident.").

To state an actionable claim for post-conviction relief, a defendant "must allege sufficient facts to establish a constitutional claim. Mere conclusory allegations will not suffice." *Wiggins v. Lockhart,* 825 F.2d 1237, 1238 (8th Cir. 1987). A motion fails if it does not set forth "sufficient allegations of facts which, if true, would justify relief." *See Smith v. United States,* 635 F.2d 693, 696 (8th Cir. 1980). "Merely stating unsupported conclusions will not suffice." *Woods v. United States,* 567 F.2d 861, 863 (8th Cir. 1978). Facts stated in a conclusory

manner are inadequate on their face. *See Delgado v. United States,* 162 F.3d 981, 983 (8th Cir. 1998).

## II.   Prejudice Prong

Second, a defendant must prove actual prejudice. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Deprivation of a fair trial means that the defendant "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington*, 562 U.S. at 104 (internal quotation marks and citation omitted); *see, e.g.*, *Bass v. United States*, 655 F.3d 758, 760 (8th Cir. 2011).

A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Harrington*, 562 U.S. at 104 (internal quotation marks and citation omitted). It is "not enough" to show that counsel's errors had *some* conceivable effect on the outcome; rather, counsel's errors "must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* (quoting *Strickland*, 466 U.S. at 687). Only when the likelihood of a different outcome is "substantial, not just conceivable," has the defendant met *Strickland*'s demanding standards.  *Stewart v. Kelley*, 890 F.3d 1124, 1128 (8th Cir. 2018) (quoting *Harrington*).

## ARGUMENT

Ross makes several claims of ineffective assistance of counsel, none of which has merit. Rather, the facts contained in the record conclusively show that Ross is not entitled to the relief she seeks, and her motion should be denied without an evidentiary hearing.

### I.  Ground One: Ross's Claim That Gray Refused To File A Notice Of Appeal Is Meritless.

Ross's first claim is that she wanted to file an appeal, but Gray refused to do so. Doc. No. 94 at 4. "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The refusal "constitutes ineffective assistance of counsel, and no specific showing of prejudice is required." *United States v. Sellner*, 733 F.3d 927, 930 (8th Cir. 2014).

Nevertheless, a defendant must show that she made her desire to appeal evident to her attorney. *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000) ("[a] bare assertion by the petitioner that he made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition") (citation omitted); *Yodprasit v. United States*, 294 F.3d 966, 969 (8th Cir. 2002) (same). While in some cases courts order evidentiary hearings on claims that an attorney

refused to file a notice of appearance, a court can deny such a claim when the defendant offers no corroborating evidence to support it. *See, e.g., Green v. United States*, 323 F.3d 1100, 1102–03 (8th Cir. 2003).

Such is the case here. Defendants are not entitled to relief when they present only "conclusory allegations unsupported by specifics." *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73 (1977)). Here, Ross's entire claim consists of three sentences. She states Gray "failed to file a notice of appeal when one was requested" and told her she "would have to hire another attorney" if she wanted to appeal. Doc. No. 94 at 4. Ross provides no affidavit, correspondence, or even a date on which the supposed conversation happened, only that it occurred "after [she] was sentenced." *Id*. Her "single, self-serving" assertion is insufficient to warrant relief. *Holloway v. United States*, 960 F.2d 1348, 1358 (8th Cir. 1992). The Court should deny Ground One.

## II. Ground Two: Gray Was Not Ineffective For Not Challenging The Stipulated Loss Amount.

Ground Two consists of two allegations of ineffective assistance. Ross asserts (1) Gray did not challenge the loss amount attributed to her and (2) "failed to make it known to the courts that the Amended PSI shows a reduced judgment amount of $1,241,455 and [she] was sentenced based on a $2,434,360 judgment." Doc. No. 94 at 5. Both aspects of the claim are "unsupported

11

conclusions" that stem from a misunderstanding of procedure and law and will "not suffice" to establish ineffective assistance. *Woods,* 567 F.2d at 863.

### A. Ross Cannot Show Prejudice Where Gray Did Not Object to the Stipulated Loss Amount.

First, Ross asserts Gray "failed to challenge the 'actual loss' attributed to [her] in the fraudulent act." Doc. No. 94 at 4. The Court should deny the claim because Ross cannot demonstrate *Strickland* prejudice.

Unsurprisingly, Gray did not object to the loss amount stipulated in the plea agreement. Doc. No. 43 at 3. To carry her burden under *Strickland*, Ross must show there is a "substantial, not just conceivable," likelihood she would have received a lower sentence if Gray had made such an objection. *Stewart*, 890 F.3d at 1128 (quotation omitted). She cannot. Setting aside her stipulation, the loss amount was not seriously in dispute in this case; any objection would have been futile. *Harrington*, 562 U.S. at 104.

Further, if Gray had objected to the loss amount, Ross would have been in breach of the plea agreement. *Covington v. United States*, 739 F.3d 1087, 1091 (8th Cir. 2014). A deliberate breach of a plea agreement is a serious matter that rarely benefits the breaching party. *Cf. United States v. Swisshelm*, 848 F.3d 1157, 1159-60 (8th Cir. 2017). The breach "would have released the government from its obligations under the plea agreement and would have allowed the government to proceed in any manner it desired with

respect to [Ross's] charges." *Covington*, 739 F.3d at 1091. Once that happened, Ross "cannot know how the government would have proceeded, and therefore [she] cannot show that [her] counsel's failure to object prejudiced [her]." *Id*. The Court should find that she cannot show any *Strickland* prejudice and deny that aspect of Ground Two.

**B. Ross's Argument About The Money Judgment Is Based On An Apparent Misunderstanding of Sentencing Law and Criminal Forfeiture Procedure.**

Ross's arguments about the loss amount and money judgment are also meritless. First, defense counsel are not required to apprise the Court of motions for preliminary orders of forfeiture. Rather, and as the record reflects, the Court received the government' motion, reviewed it, and issued an order. *See* Doc. Nos. 53, 55. Gray was under no obligation to file anything related to that issue.

More broadly, that aspect of Ground Two stems from a misunderstanding about the sentencing and forfeiture procedures in a criminal case. Ross appears to believe that the $1,241,455 requested in the government's preliminary motion for forfeiture would affect the $2,434,600 loss amount calculated at sentencing. Doc. No. 94 at 5. She is wrong. The two monetary calculations have different purposes and play different roles in a federal criminal case.

Sentencing courts calculate a loss amount in fraud cases as part of their statutory obligation to impose a fair sentence with the Guidelines as "the starting point and initial benchmark." *Gall v. United States*, 552 U.S. 38, 50 (2007). "[A]long with other relevant factors under the guidelines, loss serves as a measure of the seriousness of the offense and the defendant's relative culpability and is a principal factor in determining the offense level under this guideline." U.S.S.G. § 2B1.1 cmt. background (2025). To determine loss amount, courts must make "a reasonable estimate of the damages or loss" for which a defendant is responsible. *United States v. Agboola*, 417 F.3d 860, 870 (8th Cir. 2005). Relevant to Ross's case, that amount is the "reasonably foreseeable pecuniary harm that resulted from the offense," meaning "harm that is monetary or that otherwise is readily measurable in money." U.S.S.G. § 2B1.1(b)(1) comment n.C(i), (iii).

In contrast, "[c]riminal forfeiture statutes empower the Government to confiscate property derived from or used to facilitate criminal activity." *Honeycutt v. United States*, 581 U.S. 443, 447 (2017). Courts order forfeiture to "separate[e] a criminal from his ill-gotten gains," return property "to those wrongfully deprived or defrauded of it," and decrease the power of criminal organizations. *Id.*

There was no ineffective assistance here, and no prejudice to Ross. The Court calculated a loss amount as stipulated in the plea agreement and set

14

forth in the PSR. Doc. No. 69 at 1. The government's requested money judgment has no bearing on that finding whatsoever, so that aspect of the claim fails as a matter of law. Courts dismiss claims made in a § 2255 motion "without a hearing if . . . the petitioner's allegations, accepted as true, would not entitle the petitioner to relief." *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995). The Court should do so here.

### III.    Ground Three: Ross's Claim That Gray Did Not Explain Elements of Her Offense Should be Denied.

Ross's third claim is that Gray was ineffective because he did not "communicate pertinent elements of the fraudulent act to [her]." Doc. No. 94 at 7. She does not provide any details about what those elements are or explain how the supposed failure to explain caused her prejudice. Further, Ross stipulated in her plea agreement that she "fully understands the nature and elements of the crimes with which she has been charged." Doc. No. 43 at 1. Ground Three, like Ground One, is simply "conclusory allegations unsupported by specifics." *Voytik*, 778 F.2d at 1308. Ross does not come close to meeting her burden under *Strickland*, so the Court should deny the claim.

### IV.    Ground Four: Ross's Allegations That Gray Did Not Review The Discovery And PSR With Her Are Contradicted By The Record.

Finally, Ross alleges that Gray did not review the PSR, discovery, and "Amended PSR" with her.[2] The claim should be dismissed without a hearing because her allegations are contradicted by the record in this case. *Engelen*, 68 F.3d at 240.

Gray's objection letter belies any assertion that he failed to review the PSR with Ross prior to sentencing. The letter is so detailed and specific that it could not have been written without her input. Doc. No. 51. In disputing facts about Ross's use of the fraud proceeds, he wrote, "[Ross's] trip to Florida was for her mother's birthday and she did purchase airline tickets and then used previously earned miles to upgrade to first-class seats." *Id.* at 1. Likewise, he explained that "[a]s for the Timberwolves game, she did purchase a suite with funds, however she attended with a few adults and the remainder of the guests were kids involved in the program." *Id.* There is simply no way Gray could have obtained such precise information without Ross's involvement, lifestyle, and financial transactions without discussing the facts asserted in the PSR with Ross.

---

[2] Ross's reference to an "Amended PSR" is unclear. The undersigned consulted with the PSR author, who confirmed that the Court did not order a Revised PSR in this case. The government assumes Ross intends to reference the Final PSR (Doc. No. 57).

16

In a similar vein, the factual basis of Ross's plea agreement establishes that she was familiar with the discovery in this case. That section spans nearly two pages and contains a thorough recitation of the facts of the investigation and Ross's offense. Doc. No. 43 at 2-3. It would be nearly impossible for Ross to complete a plea colloquy in this case without having reviewed the discovery beforehand. The Court should deny Ground Four.

**V. There Is No Need For An Evidentiary Hearing.**

Ross's motion fails to establish a basis for an evidentiary hearing because each claim is either refuted by the record or lacks any legal merit. "Because the petition, briefs, and record conclusively show that [the defendant] is not entitled to relief," summary denial of the motion without an evidentiary hearing is appropriate. *Noe v. United States*, 601 F.3d 784, 792 (8th Cir. 2010). In opposing a hearing, the government acknowledges that the allegation in Ground One may require an evidentiary hearing. If the Court does order a hearing as that issue, the government respectfully asks that it be set at least 8 weeks following the issuance of any order on this matter.

**VI. The Court Should Decline To Issue A Certificate Of Appealability.**

When a court denies a § 2255 motion, the defendant is entitled to a certificate of appealability "only if [he] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

17

The issues raised in Ross's § 2255 motion are not debatable among reasonable jurists. Ross's attorney did not render deficient representation, and her arguments do not come close to clearing the high bar set by *Strickland*. She cannot meet her burden to show that reasonable jurists would find the issues debatable or deserving of further consideration. The United States therefore respectfully requests this Court not only deny Ross's § 2255 motion, but also to deny a certificate of appealability.

## CONCLUSION

For the forgoing reasons, Ross's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 should be denied.

Dated: February 3, 2026                Respectfully submitted,

                                       DANIEL N. ROSEN
                                       United States Attorney

                                       *s/Katharine T. Buzicky*

                                       By: KATHARINE T. BUZICKY
                                       Assistant U.S. Attorney
                                       Attorney ID No. 671031MA